# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

COLBY ALEXANDER FRANK,

    Plaintiff,

v.

RANDY FINE,

    Defendant.

Case No. 6:23-cv-2043-PGB-RMN

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration *sua sponte*. Having carefully reviewed the Amended Complaint (Dkt. 19), I respectfully recommend that the Court dismiss it and provide Plaintiff one more opportunity to plead his claims.

### I. BACKGROUND

Plaintiff filed this action in October 2023, purporting to assert six claims against Defendant. Dkt. 1. I recommended that the Court deny Plaintiff's motion to proceed *in forma pauperis* and dismiss the Complaint in this matter because the Complaint was an improper shotgun pleading that did not state a claim for relief. Dkt. 5. The Court adopted my Report and Recommendation, denied Plaintiff's motion, dismissed the Complaint, and directed Plaintiff to

file an amended complaint. Dkt. 7. Plaintiff subsequently filed a timely Amended Complaint. Dkt. 19.

In the Amended Complaint, Plaintiff alleges that he is bringing claims under 42 U.S.C. § 1983. Dkt. 19 at 3. The Amended Complaint contains a one-page list of various state and federal regulations. *Id*. at 6. At the top of the page, Plaintiff states that the list contains the laws that "have been broken by civil servants, agents, agencies, etc., or have probable cause to be investigated." *Id*. at 6. On the next two pages, Plaintiff alleges that he confronted Defendant on October 4, 2023, near a public speaking event. *Id*. at 7. these allegations detail the conversation that took place between Plaintiff and Defendant. *Id*. The Amended Complaint then contends that "someone alleged we had 'stormed a meeting'" and that Defendant made a threatening statement on social media. *Id*. at 8.

The Amended Complaint then purportedly asserts three causes of action. Dkt. 19 at 11–13. The first is for "intentional destruction of character." *Id*. at 11. The second is for "intentionally induced emotional distress." *Id*. at 12. The third is for breach of contract. *Id*. at 13.

## II.  LEGAL STANDARDS

Plaintiff intends to proceed in this matter *in forma pauperis*. Pursuant to 28 U.S.C. § 1915, the Court may, upon a finding of indigency, authorize the commencement of an action without requiring the prepayment of fees or

security therefor. 28 U.S.C. § 1915(a)(1). When an application to proceed *in forma pauperis* is filed, the court must review the case and dismiss it *sua sponte* if the court determines the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A suit is frivolous when it is "without any merit in fact or law." *Selensky v. Alabama*, 619 F. App'x 846, 848 (2015). Accordingly, where a district court determines from the face of the complaint that the factual allegations are clearly baseless, or the legal theories lack merit, the court may conclude a case has little or no chance of success and dismiss the complaint before service of process. *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).

The phrase "fails to state a claim on which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii).").

To withstand a motion to dismiss, a complaint must state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although

a court must accept all factual allegations in the complaint as true, it need not apply this rule to legal conclusions. *Id.* Furthermore, the factual allegations must go beyond "naked assertions" and establish more than "a sheer possibility" of unlawful activity. *Id.* (quotation marks, alteration, and citation omitted). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.  ANALYSIS

The Court is reviewing Plaintiff's second attempt to draft a complaint that complies with the basic requirements of the Federal Rules of Civil Procedure. This time around Plaintiff has added a three-paragraph section that identifies his three claims. Dkt. 19 at 11–13. Each paragraph appears to include factual allegations that relate to a single claim. *Id.*

**A.  Sufficiency of Plaintiff's Claims**

**i.  First Cause of Action**

The first claim is labelled "intentional destruction of character." Dkt. 19 at 11. I recommend construing this claim to be a state-law defamation claim.

Plaintiff here alleges that Defendant defamed him by publishing certain statements on a social media platform. Dkt. 19 at 7, 11; *see also* Dkt. 1-2 (reproductions of social media posts). Those statements include:

- "I just got jumped by a Nazi with a camera walking into a widely publicized speaking event just now. I'm fine; not sure today will go down as one of his better days." Dkt. 1-2 at 2.

- "Clearly, he couldn't take it one on one, because as I left, four of his friends were hooting and hollering on the street corner. I got pictures, though being the cowards they are, most were masked." *Id.* at 3.

- "Here's a pic of the Nazi who jumped me." *Id.* at 4.

- "Here's the Nazi's background! Already being prosecuted for one violent felony. Such losers. Mom must not have hugged him enough." *Id.* at 6.

- "The Nazis have released a two second clip from my ambush earlier this week, thinking it makes them look good. I don't think I've ever sounded more eloquent." *Id.* at 9.

To establish a claim for defamation under Florida law, a plaintiff must demonstrate: (1) publication; (2) falsity; (3) knowledge or reckless disregard of falsity on a matter concerning a public figure, or negligence on a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory. *See, e.g.*, *Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 701 (11th Cir. 2020) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). To be defamatory, a statement must be "of and concerning" the plaintiff

and must also "expose [the] plaintiff to hatred, ridicule, or contempt or injure[ ] his business or reputation or occupation." *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) (quoting *Jews for Jesus, Inc.*, 997 So. 2d at 1108–09) (internal quotation marks omitted).

"True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions[.]" *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (collection Florida authorities). A defendant publishes a pure opinion under Florida law when he makes a comment or opinion based on facts which are in the publication or which are otherwise known or available to the reader or listener as a member of the public. *Id*. Mixed expression of opinion occurs when an opinion or comment is made that is based on facts about the plaintiff or his conduct that are stated in the publication or assumed to exist by the parties to the communication. *Id*.

Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Turner*, 879 F.3d at 1262–63. When making this assessment, a court must construe statements in their totality, giving attention to any cautionary terms used by the publisher in qualifying the statement. *Id*. The Court must also determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the

assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Id.* (citation omitted).

There is no question that the social media posts meet the publication requirement. *See Trump v. Cable News Network, Inc.*, No. 22-cv-61842, 2023 WL 4845589, at *4 (S.D. Fla. July 28, 2023). The main question raised by Plaintiff's claim, like the question in *Trump*, is whether the statements were false statements of fact. *Id.*

In *Trump*, the former President Trump sued a media network for statements made during the network's "reporting and commentary on Trump's challenges to the legitimacy of the 2020 presidential election." 2023 WL 4845589, at *4. The President argued that, by describing his challenges as "the Big Lie," the network had intended to link the President to Hitler and the Nazis, thereby defaming him. *Id.* at *5. The court found that Nazi references in the political discourse—though "odious and repugnant"—are not actionable. *Id.*

Like the statements in *Trump*, the statements made by Defendant here are not susceptible to a defamatory interpretation because they are opinions. Statements indicating a political opponent is a Nazi or coward are "odious and repugnant" and far too common in today's political discourse. *See* 2023 WL 4845589, at *5. But they are not actionable defamation "because of the tremendous imprecision of the meaning and usage of such terms in the realm

of political debate." *Id.* (cleaned up). In other words, being called a Nazi or coward are not verifiable statements of fact that would support a defamation claim. *Id.* (citing *Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976)).

Plaintiff's first cause of action should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### ii. Second Cause of Action

Plaintiff's second cause of action is labelled "intentionally induced emotional distress." Dkt. 19 at 12. I recommend construing this to be a state-law claim for intentional infliction of emotional distress.

Plaintiff alleges Defendant's statements constitute threats and that Defendant "has a long history of conspiring with other political agents . . . against protected free speech activities as well as abusing his position as a legislative representative." Dkt. 19 at 8, 12–13. Plaintiff states that he "now has genuine fear for his safety" because Defendant has called Plaintiff's protected speech, among other things, "hate litter." *Id.* at 12.

To state a claim for intentional infliction of emotional distress in Florida, a plaintiff must allege: (1) a wrongdoer's conduct was intentional or reckless; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional

distress; and (4) the emotional distress was severe. *Williams v. City of Minneola*, 619 So.2d 983, 986 (Fla. 5th DCA 1993). Florida courts turn to the Restatement of torts to define outrageous conduct. *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985)). Commentary to section 46 of the Restatement explains what conduct is actionable:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965). The commentary also states that "rough language," such as "insults, indignities, threats, annoyances, petty oppressions, or other trivialities," are not actionable, because there "must still be freedom to express an unflattering opinion." *Id*.

Consistent with the Restatement, the Eleventh Circuit has noted that Florida courts are "reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse." *Lopez*, 676 F.3d at 1236. Indeed, Florida courts have found no liability when a defendant called a member of the clergy "Satan," and claimed that the clergyman had purchased a luxury vehicle using stolen funds. *LeGrande v. Emmanuel*, 889 So.2d 991,

995 (Fla. 3d DCA 2004). Other Florida courts have found no liability where the speaker made "vicious verbal attacks" that included the use of humiliating language and racial epithets. *Lopez*, 676 F.3d at 1236–37 (discussing cases). Another Florida court found no liability when the deputy director of a port wrote an "ode" about a candidate for port commissioner, including the references "hooker" and "bimbo." *Ford v. Rowland*, 562 So.2d 731, 733–34 (Fla. 5th DCA 1990).

The statements alleged in Amended Complaint are no more outrageous than the statements from these prior cases. That a self-proclaimed "white civil rights advocate" (Dkt. 19 at 14) and member of the "Goyim Defense League" (*Id.* at 7)[1] was called a Nazi is no more offensive than referring to a clergyman as Satan in front of his flock, subjecting someone to vicious and humiliating racial epithets, or calling a candidate for public office a bimbo or hooker. Like those statements, the ones here are not so outrageous that they support a claim for intentional infliction of emotional distress in Florida.

To be sure, Defendant's social media statements are unflattering, untoward, and base. Some may even say that such statements are beneath the dignity of someone who holds a political office. But insults, indignities,

---

[1] "Goyim" is the plural form of "Goy," a Yiddish term for a non-Jewish person. *Goy*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/goy.


unflattering opinions, and similar rough language do not sustain a claim for intentional infliction of emotional distress in Florida. *See* Restatement (Second) of Torts § 46 cmt. d.

Plaintiff's second cause of action should therefore be dismissed.

### iii.   Third Cause of Action

Plaintiff's third and final cause of action is labelled "breach of contract." Dkt. 19 at 13. Plaintiff appears to allege that Defendant violated his oath of office and by doing so violated an unidentified constitutional right. *Id*.

Generally, there is no "federal private cause of action for a state official's action contrary to his or her oath of office, unless that action otherwise violated a statute affording the plaintiff a private right of action or violated the plaintiff's constitutional rights forming the basis of a § 1983 action." *Morris v. Ingram*, No. 1:18-cv-106, 2019 WL 2571011, at *3 (M.D. Ala. May 9, 2019), *report and recommendation adopted*, 2019 WL 2583018 (M.D. Ala. June 21, 2019). And so, the third cause of action should be dismissed as well, unless Plaintiff alleges a sufficient factual basis for a section 1983 claim.

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that some person, acting under color of state law, deprived Plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996–97 (11th Cir. 1990). Though the Amended Complaint broadly refers to

violations of constitutional rights, it focuses more narrowly in the third cause of action on an alleged infringement of Plaintiff's "right to publish and circulate ideas." *See* Dkt. 19 at 13. Based on this, it appears Plaintiff is attempting to assert a First Amendment retaliation claim.

To state a claim for First Amendment retaliation under section 1983, a plaintiff generally must plead that (1) the plaintiff engaged in constitutionally protected speech, (2) the "defendant's retaliatory conduct adversely affected the protected speech," (3) and the retaliatory action caused the adverse effect on plaintiff's speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The Eleventh Circuit recognizes First Amendment retaliation claims because the "Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023) (quoting *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019)).

First, Plaintiff has alleged that he was arguably engaged in a constitutionally protected activity. *See Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 859 (11th Cir. 2020) (explaining that even "controversial speech" is protected by the First Amendment). Next, for conduct to "adversely affect" protected speech, Plaintiff must show Defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of constitutional rights. *Echols*, 913 F.3d at 1320. This test is objective, and so

trivial injuries—those that "amount to no more than de minimis inconvenience in the exercise of First Amendment rights"—do not satisfy it. *Bennett*, 423 F.3d at 1252. Lastly, to demonstrate a causal connection, Plaintiff must allege facts giving rise to a plausible inference that Defendant was subjectively motivated to engage in the adverse action because of Plaintiff's protected speech. *See Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

Upon careful consideration, I find that Plaintiff's allegations are insufficient to state a claim for First Amendment retaliation. In *Echols*, the Eleventh Circuit noted that at least eight federal circuit courts of appeal require a plaintiff to show that a public official's allegedly retaliatory speech amounted to "a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse action will imminently follow." 913 F.3d at 1320 (citing *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (collecting cases)). If the Eleventh Circuit would hold similarly,[2] the conduct allegedly attributed to Defendant in the Amended Complaint is not actionable.

---

[2] The *Echols* court rejected the conclusions of some other circuit courts of appeal and held that a public official's defamatory statements satisfy the "adversely affect" prong of a First Amendment retaliation claim. 913 F.3d at 1322–23. *Echols* appears to have left open the question of whether a public official's nondefamatory statements could justify such a claim. *Id.* Because I conclude elsewhere that Defendant's statements are not defamatory under Florida law, I also conclude that *Echols* informs but does not control the outcome here.

- 13 -

The First Amendment protects a public official's statements in response to his detractors just as much as it protects the detractor's statements. *Id.* at 688. Where, as here, a public official's statements do not constitute an imminent threat, they do not adversely affect a detractor's First Amendment rights. *See Echols*, 913 F.3d at 1320 (collecting cases); *Suarez*, 202 F.3d at 687 (same). And even if that were not the case, the statements attributed to Defendant in the Amended Complaint are not so untoward so as to deter a person of ordinary firmness in Plaintiff's position from continuing to engage in protected speech. *See Echols*, 913 F.3d at 1323.

For these reasons, Plaintiff's third cause of action should be dismissed.

### iv.  Unstated Cause of Action

In some places, the Amended Complaint refers to a criminal complaint. Dkt. 19 at 9. To the extent that Plaintiff is asking the Court to order the federal government to initiate a criminal investigation against Defendant, the "decision to investigate and prosecute crimes is entrusted to the executive branch." *Thibeaux v. U.S. Att'y Gen.*, 275 F. App'x 889, 892 (11th Cir. 2008) (citing *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000), and U.S. Const., art. II, § 3). The Court therefore has no authority to initiate criminal investigations on its own. *See id*. The Eleventh Circuit has also repeatedly applied the long-standing principle that "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v.*

*U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking a writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Plaintiff therefore cannot rely on the criminal code to establish a cause of action for a private civil action or seek an order from this Court requiring the government to initiate a criminal investigation. *See, e.g.*, *Thibeaux*, 275 F. App'x at 893.

<div style="text-align:center">* * * * *</div>

In sum, I respectfully recommend that the Court find that the Amended Complaint fails to state a claim upon which relief may be granted and dismiss it *sua sponte* pursuant to 28 U.S.C. § 1915. Because Plaintiff is proceeding pro se, however, I recommend providing him with one more opportunity to prepare and file a complaint that complies with the Federal Rules of Civil Procedure and is consistent with this Report and Recommendation.

## IV. CONCLUSION

Accordingly, I respectfully **RECOMMEND** the Court:

1. **DISMISS** Plaintiff's Amended Complaint (Dkt. 19) for failure to state a claim;

2. **GRANT** Plaintiff leave to file a second amended complaint by a date certain; and

3. **DIRECT** Plaintiff to renew his motion to proceed *in forma pauperis* at the same time he files an amended pleading or pay the required fee for filing a civil action.

## NOTICE TO PARTIES

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Orlando, Florida, on January 5, 2024.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Colby Alexander Frank
P.O. Box 13264
Fort Pierce, Florida 34979