IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| COLBY ALEXANDER FRANK, an individual,<br><br>                Plaintiff,<br>   v.<br><br>RANDALL ADAM FINE (a/k/a RANDY FINE) in his official capacity as Member of the Florida House of Representatives for the 33rd Congressional District of the State of Florida; and in his individual capacity; and DOES 1-99;<br><br>                Defendants. | Case No.: 6:23-cv-2043-PGB-RMN<br><br>**RULE 15(d) MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFF'S THIRD AMENDED COMPLAINT** |

**PLAINTIFF'S RULE 15(d) MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFF'S THIRD AMENDED COMPLAINT**

    1.    Since the filing of Plaintiff's Third Amendment Complaint on January 16, 2024 (ECF 25), subsequent events have occurred which support Plaintiff's motion for injunctive relief. These subsequently occurring facts are set forth in **Addendum A**.

    2.    Since the filing of Plaintiff's Third Amended Complaint on January 16, 2024 (ECF 25), Plaintiff has become aware of additional facts that support Plaintiff's claims for relief. These subsequently discovered facts are set forth in **Addendum B**.

/s/ Colby Alexander Frank

*Pro Se / In Forma Pauperis*
PO Box 13264
Fort Pierce, FL 349

# ADDENDUM A

**Events occurring after the filing of Plaintiff's Amended Complaint substantiate Defendant Fine's role in an unlawful conspiracy to deprive plaintiff of his First Amendment rights.**

1. On or about January 23, 2024, after Plaintiff filed his Third Amended Complaint (ECF 25), the Anti-Defamation League produced the following document:



A - 1

2. On information and belief, the Anti-Defamation League shared this document with law enforcement personnel including the Volusia County Sherrif's Office and the Palm Beach County Sheriff's Office (the document states "FOR INTERNAL LAW ENFORCEMENT USE ONLY").

3. ADL Florida Senior Associate Regional Director Yael Hershfield was present at and provided remarks at the same February 27, 2023 Volusia County Sherrif's Office press conference where Defendant Fine announced his plan to pass H.B. 269 and use H.B. 269 to unlawfully arrest and imprison Plaintiff for engaging in Constitutionally-protected speech activities. *See* Third Amended Complaint (ECF 25) p. 7, ¶ 23.

4. The document falsely communicated to law enforcement personnel, including the Volusia County Sherrif's Office, that Plaintiff is planning an "extremist event" at the 2024 Daytona 500. In truth and in fact, Plaintiff initiated a fundraising campaign on the fundraising website "GiveSendGo" that includes the following description for the fundraiser (*See also* TAC p. 19, ¶ 75):

> In today's increasingly hostile world against Whites&Christians it is important to educate our own on the current situation. This campaign is to assist with funding of white Civil Rights activities. Most activities will include educational hand to hand distributions of religious and political literature with intent to enlighten our otherwise lost folk and bring an end to the darkness that has a grip over this nation. Other activities include inviting political and other influential figures to debate, public speaking, and campaigning. All proceeds from this campaign will go directly to the activists on the ground equally after each event. Printer ink, paper, fuel, time off work, etc are all costs incurred by these brave and heroic men. Support your first amendment rights!

*See* <https://www.givesendgo.com/Whitecivilrights>

5. In his Third Amended Complaint, Plaintiff specifically requested "emergency preliminary injunctive relief as to the unconstitutional enforcement of H.B. 269, as well as a writ

of injunction against all law enforcement agencies attempting to persecute, arrest, or otherwise harass plaintiff for engaging in constitutionally protected literature distributions, including specifically the Palm Beach County Sheriff's Office and the Volusia County Sheriff's Office, where Plaintiff plans to again attend the 2024 Daytona500 to distribute his leaflets outside the superspeedway." TAC p. 19, ¶ 75.

6. As set forth in Plaintiff's operative pleading, Plaintiff has already been wrongfully arrested in retaliation for his Constitutionally protected speech activities including for distributing flyers in residential neighborhoods. TAC pp. 8-9; ¶¶ 29, 30, 60.

7. Plaintiff also alleged that he was retaliatorily arrested because Defendant Fine "coordinated with multiple law enforcement agencies in an attempt to shut down Plaintiff's… speech" (TAC ¶ 30), including the Volusia County Sherriff's Office, as well as "made several phone calls to other Law Enforcement Agencies throughout the State." *See* TAC p. 9 ("Chief [of Oakland Police Department] Esan received a voicemail from Mr. Fine which asked for the Chief to call him.").

8. Plaintiff further alleged that Defendant Fine also conspired with the Anti-Defamation league to retaliate against Plaintiff's speech activities. *See* TAC ¶ 69 ("Defendant Fine conspired with nonprofit associations including the Anti-Defamation League, as well as the Florida Legislature and the Volusia and Palm Beach County Sheriff's departments to retaliate against Plaintiff and prohibit him from engaging in constitutionally protected speech activities.")

9. The attached document produced by the ADL further substantiates Plaintiff's claim that Defendant Fine was or is engaged in an *ongoing* conspiracy to retaliate against Plaintiff for engaging in protected speech activities.

10. Plaintiff's stated intent to engage in Constitutionally protected speech activities including "hand to hand distributions of religious and political literature" and "inviting political and other influential figures to debate, public speaking, and campaigning…" underscores the pressing need for emergency injunctive relief to i) prevent Plaintiff's repeated unlawful arrest for exercising his First Amendment rights and ii) remedy the chilling effect of Defendant Fine's unlawful conduct on Plaintiff's exercise of his First Amendment rights.

11. At the time of the Third Amended Complaint on January 16, 2024, as well as now, Plaintiff has plans to engage in constitutionally protected speech activities on February 18, 2024, outside the Superspeedway at the Daytona 500 in Daytona Beach, Volusia County, Florida (TAC ¶ 75 ("to distribute his leaflets outside the superspeedway.")).

12. Defendant Fine and his alleged co-conspirators' actions, which include "[using] Plaintiff's face as if he was a criminal when he was and is not" (TAC ¶ 56), have the ongoing effect of chilling and deterring Plaintiff from exercising his Constitutional speech rights. Absent an injunction entered by this Court, Plaintiff's plans to engage in the peaceful distribution of religious and political literature will be chilled due to Plaintiff's well-founded and substantiated fear of wrongful arrest and imprisonment. *See* TAC p. 7 ("I was honored to join Volusia County Sheriff Chitwood yesterday for an extraordinary press conference calling these people what they are – scumbags – and committing to pass HB 269 which will put them where they belong – in prison."). Because Plaintiff has already been wrongfully arrested in retaliation for peaceful leaflet distribution, his fear is well-founded and an injunction against local law enforcement agencies to prohibit his arrest for engaging in Constitutional speech activities is an appropriate preliminary remedy. See TAC ¶¶ 75-77.

# ADDENDUM B

**Defendant Fine falsely stated that Plaintiff attempted to "break into" Rep. Fine's office.**

13.  After Plaintiff filed his Third Amended Complaint (ECF 25), Plaintiff discovered an additional post on social media by Defendant Fine accusing Plaintiff of engaging in additional criminal activity (December 1, 2023):



> **State Representative Randy Fine**
> December 1, 2023
>
> Today, these three Nazis drove to Brevard County and attempted to break into my office. Bad move. One of them was the same pathetic loser, Colby Frank, who jumped me two months ago. Having failed 1-on-1 back then, he tried again 3-on-1 today. Same outcome. Here they are fleeing the scene with their tails between their legs. I want to thank Palm Bay Police Department and the Florida Department of Law Enforcement for their response afterwards and helping me ensure we don't back down from antisemitic terrorists. If you recognize the other two, please let me know.

14.  In truth and in fact, on December 1, 2023, Plaintiff was attempting to provide Representative Fine with notice of this lawsuit. Plaintiff did not knowingly engage in any unlawful behavior, nor did he have the intent to engage in any unlawful behavior. Defendant Fine's intimation that Plaintiff attempted to "break in" to Rep. Fine's office is an allegation of criminal activity that constitutes defamation per se.

**Defendant Fine's Statements at the February 27, 2023 Volusia County Sherrif's Office press conference substantiate Defendant Fine's role in an unlawful conspiracy to deprive plaintiff of his First Amendment rights.**

15.  As set forth in Plaintiff's Third Amended Complaint, Defendant Fine delivered remarks at a February 27, 2023 press conference alongside the Volusia County Sherriff Michael J. Chitwood (TAC p. 7, ¶ 23). There, Defendant Fine announced his intent to use H.B. 269 to arrest and imprison Plaintiff for his flyer distribution activities. TAC ¶¶ 23, 27. Plaintiff provides

here several of Defendant Fine's statements made at that press conference which substantiate the claims set forth in Plaintiff's Third Amended Complaint:

16. "Now we're doing something about this in Florida. We have a Bill, H.B. 269, that will make clear that while you have the right to be an idiot, and you have the right to be a Nazi, and you have the right to walk down the street whenever you want and say whatever you want, that **when your speech turns into conduct, that is where we draw the line**. **There is no First Amendment right to litter**… **in Florida, if you do that, you're going to go to jail. And you're going to go to jail for a very long time.**"

17. "I'm proud that all of my colleagues up here are co-sponsoring this Bill, because we're going to do something about it."

18. "**The fight is coming. With people like my colleagues, with people like Sherriff Chitwood, we're going to let these people know: You're not welcome here in Florida.**"

19. "**There is no First Amendment right to conduct.** There is a First Amendment right to speech. And the things that we're targeting in the Bill are not speech."

20. "If you want to litter, it's a crime right now. But if you litter and your motivation is a hate crime, it is a third-degree felony and you will spend five years in jail."

21. "I guarantee the Bill will pass. And I never do that."

22. "Our session, myself and Reps. Leek and Tramont will start our session a week from tomorrow and that's when the game gets going, if you will. I anticipate that Bill will start to move very quickly."

B - 3

23. "I will tell you what I am most looking forward to**. I can't wait to see if those cowards want to show up and stand in front of me in Tallahassee.** That's what I'm looking forward to."

24. "Well one of the ideas we came up with with the Sherriff today, he asked us, I think the Bill right now will go into effect on October first, he suggested why don't you make it upon signature, and I think we'll be looking at amending the Bill so as soon as we can get it passed, and as soon as the Governor were to sign it, then it would become law immediately."