## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## ORLANDO DIVISION

COLBY ALEXANDER FRANK, an individual,

Plaintiff,

v.

RANDALL ADAM FINE (a/k/a RANDY FINE) in
his official capacity as Member of the
Florida House of Representatives for the
33rd Congressional District of the State of
Florida; and in his individual capacity.

Defendant.

Case No.: 6:23-cv-2043-PGB-RMN

**PLAINTIFF'S OBJECTIONS TO
MAGISTRATE'S REPORTS AND
RECOMMENDATION FOR DISMISSAL**

### PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORTS AND RECOMMENDATION FOR DISMISSAL

Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiff Colby Alexander Frank hereby objects to

the Magistrate Judge's Reports and Recommendation for dismissal of Plaintiff's Third Amended

Complaint (ECF 31 "R&R 31"), (ECF 32 "R&R 32").[1]

### I. INTRODUCTION

The Magistrate Judge's dual Reports (R&R 31 and R&R 32) seek to permanently close

the courthouse doors on Plaintiff largely for procedural reasons. As set forth below, those

procedural justifications for dismissal are without merit, and this Court should reject the

recommendation for dismissal respecting each procedural ground raised. Where the R&Rs

recommend dismissal based on the merits of Plaintiff's claims, they minimize or otherwise

---

[1] As this Court noted in its Order adopting the Magistrate's earlier Report and Recommendation
(Jan. 19, 2024), what Plaintiff stylized as his Third Amended Complaint (TAC) is the operative
pleading in this case. *See* ECF 28, Order adopting R&R and granting Plaintiff leave to amend.

wholly ignore the allegations in Plaintiff's Third Amended Complaint. As set forth below, the Magistrate's Reports outright fail to address numerous paragraphs of Plaintiff's operative complaint – including paragraphs going directly to the essential elements of a *prima facie* claim for First Amendment Retaliation under 42 U.S.C. § 1983.

The Magistrate's R&Rs are further confused as to their essential justification. On one hand, the Magistrate purports to counsel dismissal for failure to plead a federal claim pursuant to 42 U.S.C. § 1983, therefore entirely ignoring Plaintiff's state-law claim for defamation *per se* set forth in the TAC (R&R 31). On the other hand, in the second R&R (R&R 32), the Magistrate probes deeply into the merits of Plaintiff's Rule 15(d) Motion insofar as it might support his defamation claim, going so far as to analyze "rhetorical hyperbole" and comparing Plaintiff's claims to caselaw considering language such as "fleeing the scene with their tails between their legs." (R&R 32 at 10). In cruel irony, it is readily apparent from the face of Plaintiff's TAC that the strongest facts supporting Plaintiff's defamation claim appear in the TAC itself, not in the motion to supplement that pleading. *See* TAC p. 14 (alleging that Defendant Fine stated that Plaintiff was "being prosecuted for a violent felony.").[2] In the first R&R, the Magistrate wholly ignored Plaintiff's defamation claim (TAC ¶¶ 49, 51-53), yet in the second R&R, he analyzed the merits of the claim citing only the weaker, supplemental facts. Such a confused pair of rulings cries out for this Court's careful attention and review.

But there is much more. The irreconcilability of the legal analysis in the Magistrate's two R&Rs is but one flaw in what can rightly be characterized as a conclusion in search of a rationale. Similarly telling is the Magistrate's decision to lead each Report with procedural rather

---

[2] No order from the Magistrate or this Court yet exists as to whether Defendant Fine's statement that Plaintiff was being prosecuted for a violent felony states a plausible claim for relief. This was a specific factual allegation asserted for the first time in the TAC.

than substantive rationales (any justification from "thoroughness" is belied by the dubiousness of the procedural points made, discussed at length in the objections below). *See* R&R 31 (discussing "shotgun pleading" and "unknown doe defendants" before reaching the merits); R&R 32 (discussing failure to comply with local rules governing motions, including filing a separately labeled memorandum of law to support the motion, before reaching the merits).

By filing these objections, Plaintiff is asking this Court not to shut the courthouse doors on a *pro se* litigant who has been defamed, imminently threatened, harassed, arrested, and legislated against as a result of Defendant's documented and well-pleaded effort to use legislation to effectuate his *stated intention* to put Plaintiff in jail for his speech. This is a matter of public record – and it was emphatically alleged in Plaintiff's TAC. Moreover, in the TAC, Defendant's social media posts catalogues in the complaint demonstrate that the Defendant specifically targeted Plaintiff *by name and image*, aiming his imminent threats, defamatory statements, and legislative activities toward Plaintiff. A fair reading of the TAC makes that much abundantly clear. Had the Magistrate acknowledged the TAC in its entirety, he would have found plain and clear recitations of fact supporting each element of a claim for First Amendment Retaliation, which he claims as a legal conclusion were not adequately pled. Either uninformed or substantively dismissive of the TAC's plain text, the Magistrate's recommendation cannot properly direct dismissal of this suit.

At bottom, it should not be a federal court who answers for a state Representative's actions, taken under color of law, which even the Magistrate at one point in this litigation suggested are "odious and repugnant." (ECF 23 at 7, referring to non-defamatory portions of

Defendant's public discourse).[3] If Plaintiff were not a disadvantaged *in forma pauperis* claimant, Defendant Fine would be served and Plaintiff would have an opportunity to present legal briefing on the issues of law discussed herein in response to *defendant's* Rule 12(b)(6) motion to dismiss.

The Magistrate's demonstrably cursory reading of the TAC only adds insult to that injury. For the reasons set forth below, this Court should 1) deny the R&Rs in their entirety; and/or 2) modify the R&Rs consistent with these objections to allow Plaintiff's case to proceed so that he may have his day in court.

## II. STANDARD OF REVIEW

"A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the District Court "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (*citing* H.R. Rep. No. 94-1609, 94th Cong., 2d Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163).

Under Title 28 and the Federal Rules, "a judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Moreover, this court is authorized by statute "to reconsider any pretrial matter… where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

---

[3] Compare Defendant's non-defamatory insults analyzed in the prior recommendation to the *per se* defamatory statements alleged in the amended Complaint (TAC). For reasons unstated, this latter allegation went wholly unanalyzed in the Magistrate's R&Rs. *See* TAC ¶¶ 49, 51-53 (quoting Defendant as stating "Here's the Nazi's background! Already being prosecuted for one violent felony," and alleging that "Defendant Fine's statements made with actual malice including accusing Plaintiff of having been prosecuted for a 'violent felony,' where the public record demonstrates that Plaintiff has been arrested for obstructing arrest 'without violence' and for a nonviolent misdemeanor constitutes defamation per se.").

Here, Plaintiff intends to identify "specific findings that the party disagrees with." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 856-57 (11th Cir. 2010). However, all portions of the R&R are subject to review. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Those portions of the R&R to which no objection is made are reviewed under a clear-error standard. *Id.*

### III. PLAINTIFF'S SPECIFIC OBJECTIONS

**<u>Objection 1</u>: Plaintiff's Third Amended Complaint Complies with Fed. R. Civ. P. 8(a)(2) and 10(b). The Magistrate Judge Incorrectly Concluded as a Matter of Law that Plaintiff's Third Amended Complaint is an Impermissible "Shotgun Pleading."**

Citing a footnote in a dissenting Eleventh Circuit opinion by Circuit Judge Tjoflat, the Magistrate Judge incorrectly concluded that Plaintiff's Third Amended Complaint represents a "classic example" of a condemned "shotgun pleading." R&R 31 at 5, *citing T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). The only support from the TAC the Magistrate cites is the fact that "Each count realleges and incorporates all other paragraphs." (R&R 31 at 5). Reincorporation of paragraphs setting forth facts relevant to the asserted claim for relief is a ubiquitous practice in federal pleading. On its own, mere reincorporation of factual allegations is not a basis for dismissing a *pro se* Plaintiff's otherwise meritorious claims for relief. *Okposio v. Barry Univ., Inc.* (11th Cir. Nov. 13, 2023). To the extent the Magistrate relies on *Shelby* to support the contention that "[c]omplaints that do this violate the requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b)," that suggestion is not supported by *Shelby*. The Magistrate's Report incorrectly reads *Shelby* as prohibiting claimant's "incorporation of paragraphs," when reincorporation is never specifically discussed in Judge Tjoflat's opinion. *See Id.* To the contrary, the pleading in *Shelby* was rejected because it presented "a variety of contract and tort claims interwoven in a haphazard fashion." *T.D.S. Inc. v.*

*Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985). As elaborated further below, Plaintiff's TAC, complete with specifically enumerated claims for relief and labelled sections of factual allegations signposting the relationship of the pleaded facts to those counts, does not come close to presenting "interwoven" or "haphazard" claims as was the issue in *Shelby*.

The Magistrate also cites *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 n.11 (11th Cir. 2015). The Eleventh Circuit's decision in that case supports denying the Magistrate's R&Rs for at least four independent reasons:

First, in considering the operative complaint before the district court in *Weiland*, the Eleventh Circuit concluded that "the counts [were] informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1326 (11th Cir. 2015). The district court therefore "abused its discretion when it dismissed Weiland's [counts] on the ground that those counts did not comply with Rules 8(a)(2) and 10(b)." *Weiland*, 792 F.3d at 1326 (11th Cir. 2015). Here, the Magistrate must have likewise concluded that the Counts alleged were similarly informative enough to permit the Magistrate to determine whether they stated plausible claims for relief, as evidenced by the Magistrate's engaging in technical legal analysis as to the specific elements constituting a claim for First Amendment Retaliation under 42 U.S.C. § 1983 as well as common law defamation. (ECF 23 at 4-14); (R&R 31 at 6-8, analyzing elements of a First Amendment Retaliation Claim).

Second, as in *Weiland*, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* At 1324. Plaintiff's complaint spans only 20

pages. "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* At 1325.

Third, *Weiland*'s identification of different categories of shotgun pleadings evidences the Magistrate's conclusion-in-search-of-rationale approach. The earlier amended complaints did not present any language respecting "reincorporation." It was only the TAC that included reincorporation language. Therefore, the basis of the Magistrate's "shotgun pleading" rationale has shifted with this amendment of the complaint, invoking separate categories of shotgun pleadings while also scolding Plaintiff for repeating purportedly the same error twice. (R&R 31 at 4 "As the Court has explained to Plaintiff before…"). But what was at first seemingly a "shotgun pleading" of vagueness would now be made dismissible as a different category of shotgun pleading for "reincorporation." The Magistrate's chastisement is therefore unwarranted. Plaintiff should not be punished for using legalese in an honest attempt to bolster his claims for relief while seeking to avoid dismissal on vagueness grounds, only to be shut out of court on reincorporation grounds.

Fourth, and dispositively, the Eleventh Circuit has expressly refused to dismiss *pro se* complaints on shotgun pleading grounds. "We afford leeway to pro se litigants when it comes to conforming to pleadings rules." *Okposio v. Barry Univ., Inc.* (11th Cir. Nov. 13, 2023). "In *Pinson*, for example, we held that a pro se complaint, which we described as 'adopt[ing] the allegations of all preceding counts' and 'longer than it needs to be,' should not have been dismissed as a shotgun pleading because it provided sufficient notice to the defendants of the claims lodged against them." *Id. citing Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019). As in *Pinson*, the TAC "does not contain endless irrelevancies. And it does what complaints must do: it 'give[s] the defendant[ ] adequate notice of the claims against

[it] and the grounds upon which each claim rests.'" *Id. quoting Weiland*, 792 F.3d at 1323. And, as stated above, "the District Court understood the claims well enough to address their merits." *Pinson* at 1208. The Magistrate understood the claims well enough to analyze their merits. (ECF 23 at 4-14); (R&R 31 at 6-8).

The Magistrate was incorrect in his conclusion that the TAC violated both Rule 8(a)(2) and Rule 10(b). As the Eleventh Circuit has instructed, "[t]he purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Any concerns that Plaintiff's adversary will not be able to discern Plaintiff's claims ring hollow, since this R&R concerns dismissal of a *pro se* claimant's action under 28 U.S.C. § 1915(e)(2)(B)(ii) and the Defendant has not yet been served.

Finally, as to all pleading issues, this Court should follow the Eleventh Circuit's precedents on liberal construction. Here, this Court can find easily that Plaintiff has plainly satisfied the letter of federal pleading rules. Even with that, the Eleventh Circuit expressly adheres to a judicial "policy of construing pro se briefs liberally." *Laurent v. Select Portfolio Serv., Inc.*, 193 F. App'x 831, 833 (11th Cir. 2006). At nearly every point of this litigation, Plaintiff has articulated that he is at a severe disadvantage having neither an attorney willing to take his politicized case nor the funds to find one. As such, he has requested liberal construction standards be applied to this case and cited multiple different cases affirming such liberal construction standards and their implications.  The U.S. Court of Appeals for the Third Circuit has found "that where a plaintiff pleads *pro se* in a suit for the protection of civil rights the court

should endeavor to construe the plaintiff's pleading *without regard for technicalities.*" *Picking v. Pennsylvania R. Co.*, 151 F.2d 240 (3d Cir. 1945) (emphasis added). Numerous circuits, including the Eleventh, agree with that principle: *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992) (explaining the Eleventh Circuit looks at the pro se plaintiffs' pleadings "with special care" because "[t]his circuit and the Supreme Court have stated that pro se complaints are given more leeway than complaints submitted by litigants represented by lawyers.") The U.S. Supreme Court has made it clear as "an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.'" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The U.S. Supreme Court subsequently recognized this principle as "settled law." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines*). *See also Hamilton v. United States*, 67 F.3d 761, 764 (9th Cir. 1995) ("We are specifically directed to 'construe pro se pleadings liberally.' … This duty applies equally to pro se motions."); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (affording pro se litigant "the benefit of any doubt").

Holding plaintiff to such a high standard as to how the pleadings are drafted and worded inevitably places form over substance. But even applying that higher standard to this case, Plaintiff has satisfied federal pleading requirements under applicable precedents. To the extent that the Court determines that incorporation language is impermissible under relevant pleading precedents (or otherwise a source of confusion), Plaintiff asks that the Court consider the TAC as if it does not contain such language, and allow Plaintiff to simply strike this language, which was used for the first time in this pleading without any awareness of this acute category of "shotgun pleading" discussed in appellate precedents, not federal pleading rules (TAC ¶¶ 50, 55, 59, 61, 65).

**Objection 2: Plaintiff's Rule 15(d) Motion Cannot Be Dismissed for Failure to Comply with Local Rules. Such a Dismissal is Contrary to Law.**

In his Report and Recommendation (ECF 32), the Magistrate recommended that Plaintiff's the Rule 15(d) Motion be denied because it "lacks a legal memorandum in support of Plaintiff's request for leave to file a supplemental complaint." R&R 32 at 3. This decision is wrong for at least four reasons.

First, under Eleventh Circuit precedent, the district court should not dismiss the action of a *pro se* plaintiff based on a local rule when "there is nothing to indicate [the] plaintiff ever was made aware of it prior to dismissal." *Mitchell v. Inman*, 682 F.2d 886, 887 (11th Cir. 1982). This is the first instance Plaintiff has attempted to file a Rule 15(d) motion in this case. The action cannot be dismissed on this ground.

Second, the Magistrate's recommendation ultimately amounts to enforcing typography requirements. Liberal construction of *pro se* pleadings should overcome strict compliance with Local Rule 1.08 and Local Rule 3.01. In support of his report, the Magistrate Judge cites an Eleventh Circuit case to suggest that "pro se litigants [] must abide by all applicable rules, including the Local Rules of this Court and the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). But importantly, *Moon* concerned a *pro se* litigant's disregard for a discovery order, which subjected that litigant to contempt proceedings. *Id.* The central holding of *Moon* was that "if a pro se litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant." *Moon*, 863 F.2d at 837. The Magistrate improperly expands *Moon* to include a Plaintiff's first instance of failure to comply with typography requirements. A case governing compliance with local rules subjecting a *pro se* claimant to sanctions has no binding effect on a claimant's attempt to overcome dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). Moreover, nothing in *Moon* abrogates the Eleventh Circuit's

ruling in *Mitchell* establishing the general rule that a *pro se* plaintiff's first failure to comply with a local rule – here a mere typography requirement – should not authorize dismissal. *Mitchell v. Inman*, 682 F.2d 886, 887 (11th Cir. 1982).

Third, Plaintiff should be allowed to supplement his complaint when it involves presenting facts that occurred *subsequent to* the filing of his Third Amended Complaint. Fed. R. Civ. P. 15(d). Moreover, "the court may permit supplementation even though the original pleading is defective in stating a claim or defense." *Id.* Plaintiff's motion expressly included a clear statement indicating which facts being presented had occurred subsequent to the filing of the TAC. (ECF 29 at 1).

Fourth, the Magistrate incorrectly characterized Plaintiff's Rule 15(d) Motion as a motion "for leave to file a fourth amended complaint." See R&R 31 at 4, n.1 (referencing R&R 32). Amendment and supplementation are governed by separate subsections of Rule 15. The Magistrate failed to recognize the procedural device invoked, evaluating the Rule 15(d) Motion to Supplement as a Rule 15(a) Motion to Amend. At the very least, the Court should grant in part Plaintiff's Rule 15(d) Motion to supplement as to events occurring after the TAC was filed.

Insofar as any facts alleged in the Plaintiff's motion did not occur after the filing of the TAC, those facts also satisfy Rule 15 because they relate back to the TAC. *See, e.g.*, Motion to Supplement at B-2 (setting forth transcript of Defendant Fine's statements made at press conference described at TAC p. 9) ("In his own words, Defendant Fine spoke at the February 2023 Volusia County press conference about how proud he was of his efforts to outlaw federally protected First Amendment activities."). *See also* TAC p. 7 (quoting Defendant Fine's Feb. 28, 2023 Tweet boasting of "an extraordinary press conference calling these people what they are –

scumbags – and committing to pass HB 269 which will put them where they belong – in prison.")

**Objection 3**: **Plaintiff's Third Amended Complaint Cannot Be Dismissed for Naming Doe Defendants.**

Plaintiff acknowledges that Eleventh Circuit precedent "has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity." R&R 31 at 6, *citing Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (per curiam). This issue, however, is inappropriate for disposition by a Court assessing dismissal of a *pro se, in forma pauperis* claim under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Plaintiff has not had the opportunity to advance a legal argument as to whether a relevant legal exception to the general rule should apply under the particular facts of this case. Moreover, Plaintiff was wholly unaware of Appellate precedent regarding John Doe defendants until after he amended the Complaint to include them.

To the extent this Court disagrees with Plaintiff and rules that this issue is appropriate for disposition at this stage of the proceeding, Plaintiff has no objections to this portion of the Magistrate's analysis and will agree to dismiss claims against unknown, placeholder Doe Defendants. In any event, the thrust of Plaintiff's complaint is to hold Defendant Fine accountable for his unlawful actions and to compensate Plaintiff for his damages caused by Defendant Fine.

**Objection 4**: **Plaintiff Pleaded a Federal Claim for Relief Under 42 U.S.C. § 1983. The Magistrate's Failure to Recognize the Pleaded Elements of a *Prima Facie* First Amendment Retaliation Claim is Contrary to Law and Amounts to Clear Error.**

The Magistrate's three-page analysis of Plaintiff's claim for First Amendment Retaliation spends nearly as much time criticizing the clarity of the TAC as it does analyzing whether the operative pleading states a plausible claim for relief. R&R 31 at 6-8. The Magistrate's R&R

rested on concerns that the pleaded conduct by Defendant Fine amounted to "non-defamatory … protected speech" and did not rise to the level of "a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse action will imminently follow."[4] R&R 31 at 8.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that some person, acting under color of state law, deprived Plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996–97 (11th Cir. 1990). To state a claim specifically for First Amendment retaliation under section 1983, a plaintiff generally must plead that (1) the plaintiff engaged in constitutionally protected speech, (2) the "defendant's retaliatory conduct adversely affected the protected speech," (3) and the retaliatory action caused the adverse effect on plaintiff's speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). I will address each of these three elements in turn, with specific reference to the relevant paragraphs of the TAC.

<u>First Element</u>: The first element is satisfied because TAC sufficiently alleges that plaintiff engaged in constitutionally protected speech:

- TAC ¶ 13: Since approximately 2020, Plaintiff has been engaged in a widely publicized campaign of literature distribution…"

- TAC ¶ 13: "Through their various First Amendment activities, Plaintiff and the GDL seek to bring public awareness to their sincerely held beliefs on topics spanning American history, politics, religion, and government."

---

[4] The requirement of an "imminent threat" has never been expressly adopted by the Eleventh Circuit. *See Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019). Even if that were assumed to be the applicable test, Plaintiff has satisfied it in the TAC. (See R&R 32 at 6 "Most courts of appeal require a plaintiff to show that a public official's allegedly retaliatory speech amounted to 'a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse action will imminently follow.'" As set forth herein, the TAC alleged facts ranging from Defendant's threats of jailing, arrest, and physical assault among others. In any event, these concerns relate to the merits of Plaintiff's claims, not whether he has stated facts supporting a plausible claim.

- TAC ¶ 16: "Plaintiff also frequently distributes—and plans to continue to distribute—flyers containing no vulgar language or images whatsoever, which contain his personal religious and political views."

- TAC ¶ 17: "The sensational content exhibited in Plaintiff's speech does not contain any fighting words or any calls to action, but purports to include statements of fact…"

- TAC ¶ 20: "Since 2020, Plaintiff has engaged in the random distribution of flyers such as those described in Paragraph 15 throughout the District. Plaintiff has done so lawfully and without malicious intent. Indeed, every flyer Plaintiff has ever distributed includes the printed words 'these flyers were distributed randomly without malicious intent.'"

- TAC ¶ 21: "Plaintiff engages in political and religious commentary by sharing flyers with members of his community."

*See Schneider v. State*, 308 U.S. 147 (1939) (holding that an anti-littering law may not infringe the First Amendment rights of people trying to circulate information or opinions); *Jamison v. Texas*, 318 U.S. 413 (1943) (ordinance forbidding the distribution of leaflets denied appellant freedom of press and of religion guaranteed to her by the First and Fourteenth Amendments of the Federal Constitution); *Martin v. Struthers*, 319 U.S. 141 (1943) (nuisance law prohibiting door to door distributers of literature "is invalid because [it is] in conflict with the freedom of speech and press."); *Talley v. California*, 362 U.S. 60 (1960) (ordinance forbidding anonymous distribution of handbills violates the First Amendment); *Watchtower Bible & Tract Society of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 ("ordinance's provisions making it a misdemeanor to engage in door-to-door advocacy without first registering with the

mayor and receiving a permit violate the First Amendment as it applies to religious proselytizing, anonymous political speech, and the distribution of handbills.").

    <u>Second Element</u>: For conduct to "adversely affect" protected speech, Plaintiff must make two showings to satisfy the Eleventh Circuit's test. First, Defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of constitutional rights. *Echols*, 913 F.3d at 1320. Second, the Eleventh Circuit has also guided that Plaintiff must allege facts giving rise to a plausible inference that Defendant was subjectively motivated to engage in the adverse action because of Plaintiff's protected speech. See *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). Both prongs of this element are satisfied because the TAC sufficiently alleges that Defendant Fine was i) subjectively motivated to engage in adverse action because of the specific content of Plaintiff's speech, and ii) that Defendant's conduct, which included threatened jailing and punching Plaintiff in the face for his speech, would likely deter a person of ordinary firmness from the exercise of their free speech rights:

- TAC ¶ 18 [Subjective Motivation]: "As a member of the Jewish community, Defendant Fine has sought to erect protections for the Jewish community by seeking to root out critique of the Jewish community."

- TAC ¶ 22 [Subjective Motivation]: "Defendant Fine became aware of Plaintiff and/or GDL's flyers. Because he disagreed with the content in the flyers, he set out immediately to shut it down."

- TAC ¶ 22 [Subjective Motivation] [Ordinary Firmness]: "Defendant Fine posted a Tweet indicating his intent to advocate legislation that would prohibit any such distribution of literature."

- TAC ¶ 22 [Subjective Motivation] [Ordinary Firmness] [Imminent Threat] (Quoted Tweet by Defendant Fine): "He won't be able to do this much longer. Once HB 269 is signed by Governor DeSantis, he will get **five years in prison** to consider the downside of trespassing and **littering hate speech**."

- TAC ¶ 23 [Subjective Motivation] [Ordinary Firmness] [Imminent Threat]: "Defendant Fine has referred to individuals who distribute these flyers, as well as Plaintiff specifically, as 'Nazi.' Defendant Fine used this rhetoric to justify his plan to pass Florida House Bill 269. On February 27, 2023 Defendant Fine stated that 'HB 269 [] will put them where they belong – in prison.'"

- TAC ¶ 24 [Subjective Motivation] [Ordinary Firmness] [Imminent Threat]: "Plaintiff participated in displaying a political slogan on an Interstate-95 overpass. Defendant Fine, communicating his personal dislike for Plaintiff's speech, called for violence to shut it down. Defendant Fine responded to the I-95 incident by stating 'Kyle should shoot these assholes' with accompanying reshared language 'This is sickening!!'"

- TAC ¶ 27 [Subjective Motivation] [Ordinary Firmness] [Imminent Threat]: "Defendant Fine spoke at the February 2023 Volusia County press conference about how proud he was of his efforts to outlaw federally protected First Amendment activities." See also ECF 29 at B2-3:

  o "There is no First Amendment right to litter… in Florida, if you do that, you're going to go to jail. And you're going to go to jail for a very long time."

- o "The fight is coming. With people like my colleagues, with people like Sherriff Chitwood, we're going to let these people know: You're not welcome here in Florida."

- o "There is no First Amendment right to conduct."

- o "I can't wait to see if those cowards want to show up and stand in front of me in Tallahassee."

- TAC ¶ 26 [Subjective Motivation]: "As House Whip in the Florida Legislature, Defendant Fine campaigned throughout 2023 to cause Plaintiff and Plaintiff's friend's trouble with law enforcement as retaliation for First Amendment protected activities."

- TAC ¶ 31 [Subjective Motivation] [Ordinary Firmness]: "Defendant Fine's published statements indicate his intent to use House Bill 269, a bill he co-introduced, to jail, imprison, and stifle Plaintiff for engaging in protected free speech activities."

- TAC ¶¶ 37-38 [Imminent Threat]: "Defendant Fine scoffed at Plaintiff, then responded by calling Plaintiff 'scum,' 'a fucking Nazi,' and other terms. Defendant Fine exclaimed, **"you're lucky I don't punch you in the fucking face**.""

- TAC ¶¶ 47-48 [Subjective Motivation] [Ordinary Firmness] [Imminent Threat] "On his twitter tirade Defendant Fine also shared Plaintiff's picture, **clearly showing Plaintiff's face**. The photo was posted on Defendant Fine's X and reshared to multiple news agencies. 'Here's a pic of the Nazi who

jumped me.' After associating Plaintiff with 'Nazis,' Defendant Fine then stated he wants to legalize punching Nazis." See also ECF 29 at B-1:

- o "Today these three Nazis drove to Brevard County and attempted to break into my office… One of them was the **same pathetic loser, Colby Frank**, who jumped me two months ago…"

- ▪ Etc… Consistent with the *de novo* review standard, I encourage the Court to consider the pleadings in their entirety. Even if the TAC contained only those statements set forth above, Plaintiff would overwhelmingly surpass the governing legal standard to assert the second element of a Section 1983 action for First Amendment Retaliation.

<u>Third Element:</u> The third element is satisfied because the TAC sufficiently alleged that Defendant Fine's retaliatory actions adversely affected Plaintiff's speech, including Defendant's co-authoring and co-introducing a bill targeting Plaintiff's flyering activities, legislating to make Plaintiff's flyering activities unlawful, and making threats and per se defamatory publications about Plaintiff specifically by name and while using Plaintiff's image.

- ▪ TAC ¶ 29: "In May 2023, Plaintiff was arrested in connection with a flyer distribution campaign and jailed for several hours."

- ▪ TAC ¶ 77: "As a result of Defendant Fine's conspiring against Plaintiff, Plaintiff has been arrested, jailed, and deterred from exercising his right to speak and distribute literature for fear of arrest and imprisonment."

- ▪ TAC ¶ 77: "Plaintiff was, is truth and in fact, arrested and jailed after exercising his First Amendment rights to distribute literature containing his personal religious and political beliefs." See also ECF 29 at A-4:

○ "Plaintiff's plans to engage in the peaceful distribution of religious and political literature will be chilled due to Plaintiff's well-founded and substantiated fear of wrongful arrest and imprisonment. See TAC p. 7 ("I was honored to join Volusia County Sheriff Chitwood yesterday for an extraordinary press conference calling these people what they are – scumbags – and committing to pass HB 269 which will put them where they belong – in prison.") Because Plaintiff has already been wrongfully arrested in retaliation for peaceful leaflet distribution, his fear is well-founded…"

**Objection 5: The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims; The Magistrate Incorrectly Determined that Supplemental Jurisdiction was Inappropriate Under 28 U.S.C. § 1367; By Analyzing the Merits of Plaintiff's Defamation Claim, the Magistrate Exercised and Implicitly Acknowledged Subject Matter Jurisdiction.**

Plaintiff objects to this recommendation because in a previous R&R (ECF 23 at 4-8) and then again in R&R 32, the Magistrate engaged in an analysis of the merits of Plaintiff's state-law claims by analyzing the facts and merits supporting the defamation claim. To argue the facts and requirements of the state-law claims is to accept jurisdiction over those claims.

## IV. CONCLUSION

In light of the foregoing, the Magistrate's R&Rs are willfully selective, ignore the plain language of the TAC, and seek to litigate the merits of Defendant Fine's legal defenses—rather than take the Plaintiff's allegations as true and assess them as presented. Properly construed, the TAC (with or without the benefit of the Motion to Supplement) paints a colorable picture of unlawful conduct that cries out for an answer by a state government official who has acted under color of state law to willfully infringe on Constitutional speech rights. What's more, he has

stated time and again his express intent to do so. I am asking this Court for a fair analysis of the facts set forth in the complaint, consistent with the law.

Plaintiff and his colleagues have distributed flyers on driveways for years on the subject matter of politics and religion. Those flyers lack fighting words. They were distributed in a manner protected by the precedents of the Supreme Court of the United States.

State Representative Randy Fine (and doubtless many others) does not like my political and religious literature. Mr. Fine is allowed to disagree with my speech. In fact, I have invited him to do so through peaceful, gentlemanly public debate, and Mr. Fine has responded by threatening to punch me in the face, and by sharing my face and name along with statements that he plans to use legislation to arrest and imprison me, among other acts. And while Mr. Fine is free to disagree with my speech, that is fundamentally not what this case is about.

What this case *is* about is the fact that instead of engaging in disagreeable speech in the public square, Representative Fine chose a different path—an unconstitutional course of retaliation against me and all others who distribute my literature, which he disagrees with. He responded by campaigning over the course of many months to classify my literature as "garbage," and to have me charged criminally should I continue to distribute it at private residences. Rep. Fine authored and co-introduced a hate-crime enhancement to Florida littering law, where his categorization of my literature as "garbage," resulted in my arrest and jailing. While he campaigned for this law, standing shoulder-to-shoulder with local law enforcement personnel, he specifically stated his intent to use it to arrest and imprison "Nazis" like me while posting my name, my photograph, and levying demonstrably false and defamatory statements insinuating that I have a felonious criminal record, attempted to assault him, and attempted to

burglarize his office. This behavior by a State officer is not just unacceptable or intolerable – it is patently unlawful.

Randy Fine did not just "support a bill that amended Florida's statute prohibiting litter." (R&R 31 at 7, citing Dkt. 25 ¶ 66). State Representative Randy Fine, acting as House Whip in the Florida Legislature, authored, co-sponsored, campaigned for, was present alongside Governor Ron DeSantis where H.B. 269 *was signed on foreign soil* and attended press conferences supporting a Bill with the stated intention to arrest and imprison his detractors, where Plaintiff was specifically mentioned by name—and with his picture shown as if he is a criminal when he is not and has never been. TAC *passim*. All of this was done in reference to and as retaliation for my protected First Amendment activity. Rep. Fine himself stated, on live television, alongside state police and in his social media posts that I (and people like me engaging in protected literature distribution) belong in prison for actions *that were not criminal until Randy Fine himself campaigned to make those actions criminal*. He did so because he disagreed with the content in my political and religious literature. The R&R willfully ignored the facts alleged in the TAC.

Finally, three outstanding facts bear mentioning: First, the Magistrate completely ignored the facts alleged in TAC ¶ 27 which shows a chain of email communications between myself and the public relations consultant for the Town of Oakland Police Department, which further proves beyond any reasonable doubt that Mr. Fine did have communications with the local law enforcement immediately following a separate but extremely similar First Amendment literature distribution.

Second, the Magistrate never discussed the allegation that Randy Fine retaliated against me in December of 2021 for displaying banners over a highway overpass by stating "Kyle should

shoot these assholes," on a Facebook post that was subsequently shared on live television. This is simply another example of an incident where he called for violence against me specifically for my First Amendment activity.

Third and finally, at this third amended stage, these proceedings have become a game of highly technical pleading-rules whack-a-mole, while requirements at law have nevertheless been clearly explained and satisfied by the pleaded facts. This Court has full knowledge that if these proceedings had been brought forward by Counsel on Plaintiff's behalf, these newly raised, vexatious procedural hurdles would be unnecessary to impose (I assume counsel would have full knowledge of appellate precedents interpreting federal pleading rules), and the Defense would have already been served and given an opportunity to present his Answer. In whole or part, Plaintiff is unable to retain counsel and has reason to believe that certain counsel would intentionally sabotage his case *as a result of Randy Fine's defamatory statements.* One reason Plaintiff has not been able to retain counsel to ensure zealous compliance with procedural rules is because of the controversial nature of associating with Plaintiff's name and ideology, and the fact that the Defendant *in this case* has defamed Plaintiff and besmirched his image, thereby contributing to Plaintiff's disadvantage.

Justice is to be denied to nobody. *Justitia nemini neganda est.* I respectfully request that you deny the Magistrate's recommendation for dismissal. I further move to serve Randy Fine with a copy of the operative complaint under Federal Rule of Civil Procedure 4(c)(3) and demand his response.

## V. REQUEST FOR RULING ON OBJECTIONS

Plaintiff respectfully prays for a specific ruling either sustaining or overruling each of his written objections pursuant to Fed. R. Civ. P. 72(b)(3), with accompanying rationale for the decision, as well as on any other issues which this Court deems just and proper to address.

Respectfully submitted,

February 29, 2024

/s/ Colby Alexander Frank

**Pro Se / In Forma Pauperis**
PO Box 13264
Fort Pierce, FL