# ATTACHMENT A (*Desguin v. FDLE & DeSantis*)

judicial.clerk.leon.fl.us/image_orders.asp?caseid=3168581&jiscaseid=&defseq=&chargeseq=&dktid=1...

here on the bookmarks bar.  Import bookmarks now...

6 / 16   —   80%   +

21.     In or around August or September of 2023, Plaintiff received a call from Defendant DeSantis's COS Alex Kelly, inquiring about a group of Neo-Nazi demonstrators protesting in Orlando. Kelly advised Plaintiff that Defendant DeSantis wanted someone arrested that day based on a new bill he signed, House Bill 269.  DeSantis was running for President at that time.  Plaintiff informed Kelly that FDLE could not arrest a person participating in a First Amendment protected activity. Kelly immediately responded by saying, "I don't think you

5

understand. If you look hard enough, you can find a way. The Governor [DeSantis] wants someone arrested today. He [Defendant DeSantis] will stand by you in any arrest."

22.     Plaintiff conveyed to Kelly that FDLE lacked probable cause based on his observations, emphasizing that even if Defendant DeSantis supported FDLE, an arrest would remain illegal or unconstitutional. Kelly insisted on proceeding with the arrest after which Plaintiff assured Kelly that FDLE would evaluate the activity, and if criminal conduct was detected, necessary actions would ensue. No arrests occurred that day.

23.     Defendant DeSantis, through his upper level staff, continued to persistently pressured Defendant FDLE to effectuate an arrest in the Orlando area over the course of several days. Present for some of these discussions were Glass and FDLE Deputy Executive Director Shane Pollard. Numerous objections were voiced by FDLE employees, including Plaintiff, asserting that they could not simply arrest someone solely because Defendant DeSantis desired it. After multiple discussions involving Defendant DeSantis, the Florida Highway Patrol ("FHP"), and the review of several videos, Defendant FDLE and FHP proceeded with arrests in September, 2023.