# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

COLBY ALEXANDER FRANK, an individual,

        Plaintiff,

v.

RANDALL ADAM FINE (A/K/A RANDY FINE) IN HIS OFFICIAL CAPACITY AS MEMBER OF THE FLORIDA HOUSE OF REPRESENTATIVES FOR THE 33RD CONGRESSIONAL DISTRICT OF THE STATE OF FLORIDA; AND IN HIS INDIVIDUAL CAPACITY,

        DEFENDANT.

Case No.: 26:23-cv-2043-JSS-RMN

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FINE'S MOTION TO DISMISS**

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FINE'S MOTION TO DISMISS

### STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a cause of action, the Court must generally confine itself to the allegations within the four corners of the complaint. The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the pleader. *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, *Fresh Capital Fin. Servs. v. Bridgeport Capital Servs.*, 891 So. 2d 1142, *Salit v. Ruden*, 742 So. 2d 381. The relevant test is whether the pleader could prove any set of facts in support of the claim that would entitle him to relief.

*Estate of Rocks v. McLaughlin Eng'g Co.*, 49 So. 3d 823, *Wausau Ins. Co. v. Haynes*, 683 So. 2d 1123.

Florida courts have historically followed the "no set of facts" standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), which allows a complaint to survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." (emphasis added). *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385 (11th Cir. 1998); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364 (11th Cir. 1997). Under any standard, Plaintiff need only "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

## **INTRODUCTION**

In a desperate attempt at minimizing Plaintiff's claims, Defendant contends that they can't be sued for speaking and participation in the press conference—and beyond—denouncing, defaming, and ultimately calling for Plaintiff to be jailed, or legislating away Plaintiff's First Amendment right to distribute literature. But the answer wholly fails to address the multifarious specific defamatory and retaliatory statements that Defendant Fine did in fact address toward Plaintiff *personally*.

Defendant's answer fails to address the conspiratorial animus of the legislation in its entirety, namely that the legislation, press conference, and

defamatory tweets collectively were a response to Plaintiff's First Amendment activities, and that the press conference and tweets included remarks campaigning for jailing Plaintiff. Plaintiff's complaint *does* allege that Defendant's conduct interfered with his Constitutional rights as well as allege his participation in a conspiracy to do so. A fair reading of the complaint, taken in the light most favorable to Plaintiff, is that Plaintiff is alleging Defendant to have attempted to "deprive persons of rights or privileges," to publish religious and political literature through fear, intimidation, and ultimately, retaliatory legislation designed to further silence Plaintiff. For the reasons set forth in this brief, the MTD must fail.

## **ARGUMENT**

If this were a novel question, it would be a difficult one. But it's nothing new. The U.S. Supreme Court has already decided that the First Amendment applies with full force (perhaps with even greater force) to disagreeable speech. Even offensive speech, or so-called "hate speech" is protected speech under the First Amendment. See *Matal v. Tam*, 582 U.S. 218 (2017); *Snyder v. Phelps*, 562 U.S. 2 443 (2011); *National Socialist Party of America v. Village of Skokie*, 432 U.S. 43 (1977); *Beauharnais v. Illinois*, 343 U.S. 250 (1952); *Terminiello v. City of Chicago*, 337 U.S. 1 (1949). Still, this case is different from the marching in *Skokie*, or the Westboro Baptist Church members bombastically picketing a funeral in *Snyder*.

Plaintiff isn't marching, gathering, or inciting calls to violence against anyone. He's circulating pamphlets.

Since Thomas Paine, the practice of circulating pamphlets like his famous Common Sense has been the most straightforward method of publishing and circulating ideas in our free society. Our founders recognized this, and in 1789 they enshrined the freedom of the press in our First Amendment. That right has been incorporated against the States for nearly a century since the Supreme Court's decision in *Near v. Minnesota*, 283 U.S. 697 (1931).

Defendant Fine doesn't like these American ideals. Instead, he prefers the practice of terrorist tyrants: censorship. "Censorship reflects a society's lack of confidence in itself. It is a hallmark of an authoritarian regime." *Ginzberg v. United States*, 383 U.S. 463 (1966) (Potter, J., dissenting). Dating to President Adams' Alien and Sedition Acts, we've rejected the practice of censorship in America for centuries.

The American tradition is one that respects the marketplace of ideas. "The aim of the historic struggle for a free press was to 'establish and preserve the right of the English people to full information in respect of the doings or misdoings of their government.'" *United States v. Rumely*, 345 U.S. 41, 56 (1953), quoting *Grosjean v. American Press Co.*, 297 U. S. 233, 247 (1936). The Court should uphold that tradition here, and allow Plaintiff to continue his case.

There is no "legislative privilege" to threaten retaliatory legislation and jail political detractors engaging in disagreeable speech. There is no "legislative privilege" to call for the arrest and jailing of your political opponents. And there is certainly no "legislative privilege" to defame and harass someone for circulating ideas you don't like.

The First Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019), quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). It is "settled law that *state officials* may not retaliate against associations and individuals for their exercise of First Amendment rights." (emphasis added) *Georgia Ass'n of Educators v. Gwinnett Cnty. Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988). Here, Defendant Fine did both. He did so through legislative means, and also through means wholly independent of the legislative process. He used his status as a legislator to personally call law enforcement agencies and ask them to act as his personal enforcers—something that is not a legislative duty and has nothing to do with the legislative process. His message was clear: He asked police departments to shut down speech he didn't like by arresting his political opponents. See TAC ¶¶ 60—63.

The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not

be great in order to be actionable." *Bart v. Telford*, 677 F.2d 622, 625 (Posner, J.).
Defendant Fine's pattern of targeted retaliatory conduct *far surpasses* the bar to state
a First Amendment claim for retaliation.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that some
person, acting under color of state law, deprived Plaintiff of "rights, privileges, or
immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §
1983; *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996–97 (11th Cir. 1990).
To state a retaliation claim, a private citizen must establish: (1) that his or her "speech
or act was constitutionally protected"; (2) "that the defendant's retaliatory conduct
adversely affected the protected speech"; and (3) "that there is a causal connection
between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*,
423 F.3d 1247, 1250 (11th Cir. 2005).

The first element is satisfied because the complaint sufficiently alleges that
plaintiff engaged in constitutionally protected speech. See TAC in general. ("Since
2020, Plaintiff has engaged in a campaign of literature distribution…); ¶ 14
("Plaintiff engages in political and religious commentary by sharing flyers with
members of his community); ¶ 15 ("Since 2020, Plaintiff has engaged in the random
distribution of flyers throughout the District"); ¶ 16 ("Plaintiff frequently
distributes—and plans to continue to distribute—flyers… The flyers provide
information on topics ranging from the history of the trans-Atlantic slave-trade; to

gun control; abortion; immigration; economics; feminism; the JFK assassination ***(which has now been declassified to confirm Israeli involvement)***; the Israel-Palestine conflict; and the relationship between religion and American politics"); ¶ 67 ("Most activities will include educational hand to hand distributions of religious and political literature…").

Defendant's MTD even doubles down on Defendant Fine's conduct. "Plaintiff alleges that Congressman Fine engaging in his legislative duties by sponsoring a bill combating what Plaintiff erroneously believes to be "protected speech" entitles him to civil relief." (MTD at 5-6) Despite Defendant's MTD spitefully suggesting otherwise, Plaintiff's distribution of flyers *is* protected First Amendment activity. See *Schneider v. State*, 308 U.S. 147 (1939) (holding that an anti-littering law may not infringe the First Amendment rights of people trying to circulate information or opinions); *Jamison v. Texas*, 318 U.S. 413 (1943) (ordinance forbidding the distribution of leaflets denied appellant freedom of press and of religion guaranteed to her by the First and Fourteenth Amendments of the Federal Constitution); *Martin v. Struthers*, 319 U.S. 141 (1943) (nuisance law prohibiting door to door distributers of literature "is invalid because [it is] in conflict with the freedom of speech and press."); *Talley v. California*, 362 U.S. 60 (1960) (ordinance forbidding anonymous distribution of handbills violates the First Amendment); *Watchtower Bible & Tract Society of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 ("ordinance's provisions

7

making it a misdemeanor to engage in door-to-door advocacy without first registering with the mayor and receiving a permit violate the First Amendment as it applies to religious proselytizing, anonymous political speech, and the distribution of handbills.").

For conduct to "adversely affect" protected speech, Plaintiff must make two showings to satisfy the Eleventh Circuit's test. *First*, Defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of constitutional rights. *Echols*, 913 F.3d at 1320. *Second*, the Eleventh Circuit has also guided that Plaintiff must allege facts giving rise to a plausible inference that Defendant was subjectively motivated to engage in the adverse action because of Plaintiff's protected speech. See *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). Both prongs of this element are satisfied because the TAC sufficiently alleges that Defendant Fine was i) subjectively motivated to engage in adverse action because of the specific content of Plaintiff's speech, and ii) that Defendant's conduct, which included threatened jailing and punching Plaintiff in the face for his speech, would likely deter a person of ordinary firmness from the exercise of their free speech rights. These were imminent threats. Echols at 1320.

*First*, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Any

8

ordinary person would be deterred from the exercise of their First Amendment rights to engage in a literature distribution campaign if a State Representative took to the press and fulminated his desire to pass laws that would jail the distributor. Moreover, any reasonable person would be deterred from sharing literature under the same circumstances when that same State Representative made those remarks alongside state law enforcement officials. "The threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023). Therefore, Defendant Fine's conduct—*even without actually introducing and voting for legislation*—would likely have deterred persons of ordinary firmness from exercising their First Amendment rights to speak and distribute literature under threat of arrest or jail.

*Second*, Defendant Fine was subjectively motivated to engage in adverse action because of Plaintiff's speech. E.g. TAC ¶ 26 ("with people like Sherriff Chitwood, we're going to let these people know: You're not welcome here in Florida"); ¶ 30 ("They are proud of these beliefs" [referring to Plaintiff]); ¶ 32 ("I can't wait to see if those cowards want to show up and stand in front of me in Tallahassee"); ¶ 33 ("Referring to the individuals Sheriff Chitwood listed by name and photograph, including Plaintiff, Defendant Fine stated, 'They don't scare me, I'm not afraid of them and we're coming for them'"); ¶ 44 ([to Plaintiff's face]

"you're scum" and "you're beneath me"); ¶ 42 ("you're lucky I don't punch you in the f****** face"); See also generally ¶¶ 19—34; 55.

The third element is satisfied because the TAC sufficiently alleges that Defendant Fine's retaliatory actions adversely affected Plaintiff's speech, including Defendant's co-authoring and co-introducing a bill targeting Plaintiff's flyering activities, legislating to make Plaintiff's flyering activities unlawful, and making threats and per se defamatory publications about Plaintiff specifically by name and while using Plaintiff's image.




Plaintiff Colby Frank.

Incorporated by reference pursuant to *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).



As a result of Defendant Fine's conduct, Plaintiff has been arrested, jailed, and deterred from exercising his right to speak and distribute literature for fear of arrest and imprisonment. Plaintiff's plans to engage in the peaceful distribution of religious and political literature were chilled because of Plaintiff's well-founded and substantiated fear of wrongful arrest and imprisonment. Indeed, this fear was reasonable because Plaintiff was actually arrested and jailed in connection with a protected literature distribution.

Applying any such of legislative immunity to bar Plaintiff's lawsuit effectively amounts to writing a blank check for legislators to engage in the exact conduct alleged here: an ***overwhelming pattern of targeted retaliation*** against a political opponent, including calling for their arrest and jailing, as well as introducing and lobbying for laws to effectuate that stated purpose. This achieves the very antithesis of what the Constitution of the United States was aiming toward: protecting and preserving our system of separated powers; and preventing the abuse of our adversarial system.

It is important to note that this case is not an attempt to strike down an unconstitutional statute: the statute itself could not exist in the first place without a preexisting unconstitutional motivation. Compare Dkt 45 at 7. Plaintiff is challenging Defendant Fine's conduct as a whole, including acts outside the ordinary course of legislation such as publishing per se defamatory claims.

Where Defendant's MTD states "The Eleventh Circuit has noted the purpose of legislative immunity is "to free legislators from such worries and distractions, it makes sense to apply the doctrine regardless of the capacity in which a state legislator is sued." Scott v. Taylor, 405 F.3d 1251, 1256 (11th Cir. 2005)." (MTD at 6) Legislators *should* be worried and distracted when their conduct amounts to ***intentionally dismantling*** the protected rights of their political opponents—that is not a legislative activity—it is a usurping. To knowingly dismantle the rights of one's political opponents—through legislative or nonlegislative means—essentially amounts to a premeditated assault on the Constitution while protected by administrative opinions. This conduct is a mockery of our Constitution and has been warned against for centuries.

The passage of premeditated unconstitutional legislation is only one of many factors to be considered in determining whether Defendant Fine's conduct would deter a person of ordinary firmness from engaging in speech activities. That is the standard the Court must consider when assessing whether Plaintiff has stated a claim for First Amendment Retaliation. To outlaw Defendant's political opposition through legislation has nothing to do with the regular course of the legislative process. It is rather an intentional abuse and expansion of legislative power. That is not protected conduct. Defendant Fine essentially outlawed campaign literature for a third political

party. Also, this Court cannot ignore the conduct that occurred *outside* of the legislative process.

"The threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023).





Based on these two social media posts from Defendant Fine, this Court simply cannot dismiss.

The Court cannot protect Defendant Fine for a ***premeditated assault*** on our Constitution—it is treason. It is even more treasonous when done with intent to aid and comfort a privileged certain few, and prejudice particular others, by butchering the outsider's capacity of participation in public discourse, which is an obstruction of their capacity to access, communicate with, and instruct their servant— government. "The law was written specifically to address the kinds of activities the Goyim Defense League regularly engages in."[1]

"Certainly all those who have framed written Constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be that an act of the Legislature repugnant to the Constitution is void." *Marbury v. Madison*, 5 U.S. 177 (1803) Defendant Fine knowingly drafted this unconstitutional law with full intent to suppress Plaintiff's speech, and that law "repugnant to the Constitution is void," *Id*. then so too is Defendant's immunity. "Courts are bound by that instrument." *Id*. "Could it be the intention of those who gave this power to say that, in using it, the Constitution should not be looked into? That a case arising under the Constitution should be decided

---

[1] A Florida sheriff is on the warpath against neo-Nazi 'scumbags' who want him dead - Jewish Telegraphic Agency

14

without examining the instrument under which it arises? This is too extravagant to be maintained." *Id.*

**Defamation**. The elements of defamation are well recognized: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.[2]

Defendant Fine said "Now we're doing something about this [Plaintiff] in Florida. We have a Bill, H.B. 269, that will make clear that while you have the right to be an idiot, and you have the right to be a Nazi, and you have the right to walk down the street whenever you want and say whatever you want, that when your speech turns into conduct, that is where we draw the line. There is no First Amendment right to litter… in Florida, if you do that, you're going to go to jail. And you're going to go to jail for a very long time." ¶38

Defendant Fine is a graduate of Harvard University. Defendant Fine is also a politician. Defendant Fine knows full well that placing a newspaper into a Ziploc bag and tossing it onto a private residential property is nowhere near the criminal definition of "dumping of litter." Defendant Fine has willfully, defamatorily, and out

---

[2] *See generally*, W. PAGE KEETON, DAN B. DOBBS, ROBERT E. KEETON & DAVID G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 19, at 771 (5th ed. 1984).

of a conspiratorial animus to "do something about this [Plaintiff's newspapers] in Florida," fabricated the idea that Plaintiff's newspapers can be called "criminal litter." **This idea by its very nature *must* be both defamatory and conspiratorial.** Defendant Fine knows that newspapers are not a criminal piece of "litter," and yet he falsely and maliciously purports to the public that Plaintiff's distribution of newspapers is criminal because he wants to silence Plaintiff.

In general, Defendant's answer is an extraordinarily weak attempt to claim that Plaintiff does not state enough allegations to bring forth a defamation case. Applicable caselaw states the exact opposite. Defendant forgets that attendance, speaking, supporting, and commenting in agreement with Defendant Chitwood's nonsense as well as the numerous tweets and publications from Defendant outside of and wholly independent of the press conference is absolutely defamatory by law. The statements at the press conference of hitlists, bullets in Chitwood's head, and child porn on Chitwood's computer are ubiquitously false. The social media publications outside of the press conference referencing Plaintiff as a "violent felon," or "burglarizing an office," are *clearly* defamatory.





**State Representative Randy Fine** ✔
December 1, 2023 · 🌐

Today, these three Nazis drove to Brevard County and attempted to break into my office.   Bad move.   One of them was the same pathetic loser, Colby Frank, who jumped me two months ago.   Having failed 1-on-1 back then, he tried again 3-on-1 today.   Same outcome.   Here they are fleeing the scene with their tails between their legs.   I want to thank Palm Bay Police Department and the Florida Department of Law Enforcement for their response afterwards and helping me ensure we don't back down from antisemitic terrorists.   If you recognize the other two, please let me know.

At the press conference, by reaffirming and validating Defendant Chitwood's nonsense, *after* Plaintiff's image was displayed, Defendant's conduct is abundantly defamatory *and about Plaintiff*. Even if Chitwood or Defendant Fine didn't accuse

Plaintiff *individually* of the insane criminal acts, the statements made clearly imply Plaintiff's participation in them. As to the press conference, in the *Jews for Jesus* case, the Florida Supreme Court articulated the relevant inquiry as follows:

> Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, *or* (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication. . ."

*Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp.1988).

*First*, the statements at the press conference clearly juxtapose Plaintiff as participating in a series of violent and unlawful acts, with all Defendants commonly using language such as "they," and "their," to falsely imply Plaintiff's participation in unlawful collective group activity after Plaintiff was personally introduced to the audience.

Even if the exact statements made by Defendant were objectively true, "Defamation already recognizes the concept that **literally true statements** can be defamatory where they create a false impression. This variation is known as defamation by implication and has a longstanding history in defamation law. *See*

*Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007)" *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

In *Wolfson* the court concluded, "We conclude, however, that from the language of the comment, it does not seem unreasonable to infer that persons hearing the same and possessed of a common mind might have taken it to mean that the plaintiff was a person with whom commercial relations were undesirable. Given this meaning, the comment attributes to the plaintiff a characteristic which is incompatible with the conduct of any lawful business." *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. Dist. Ct. App. 1973).

*Also*, if this Court were to find that Defendant's statements were of **pure opinion**, relevant caselaw still grants Plaintiff his claim. "*Hepps* ensures that a statement of opinion relating to matters of public concern which *does not contain a provably false factual connotation* will receive full constitutional protection." *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990) (emphasis added). The problem for *all* Defendants in this case is that each speaker implicitly incorporates by refence the series of false facts and "provably false factual connotations," as part of their speeches, specifically, Chitwood's demonstrably false criminal allegations against Plaintiff. *Id. See also Greene v. Times Publ'g Co.*, 130 So. 3d 724, 730 (Fla. App. 2014) ("A statement is not defamatory unless the 'gist' or 'sting' of the statement is

defamatory. The gist of any statement within a publication or broadcast is found only by reference to *the entire context*.") (emphasis added).

Also, in *Bobenhausen*, the Court said "Spoken words falsely imputing a criminal offense to another are actionable *per se*... Clearly then the statement made by Boucher to another that Bobenhausen was a 'thief and a crook' who 'stole him blind' was slander per se, if false." *Bobenhausen v. Cassat Ave. Mobile*, 344 So. 2d 279, 281 (Fla. Dist. Ct. App. 1977) (citing *Abraham v. Baldwin*, 52 Fla. 151, 42 So. 591 (1906); *Tip Top Grocery Co. v. Wellner*,135 Fla. 518, 186 So. 219 (1938).

Regarding **damages**, Plaintiff has graduated with the technical degree of aerospace engineering. The remarks made at the February 27th, 2023 press conference fundamentally cause damage to Plaintiff's name and reputation for employment purposes.  However, because the statements of criminal activity made by the Sheriff and reaffirmed by all of his friends in attendance amount to defamation *per se*, due to their egregiousness, damages are presumed under Florida law:

In *Bobenhausen* the Court further said:

> General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander. They are allowable whenever the immediate result is to impair the plaintiff's reputation, *although no actual pecuniary loss is demonstrated*... Words which are actionable in

> themselves, or *per se*, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result. Moreover malice is presumed as a matter of law from the publication of such words.

*Bobenhausen v. Cassat Ave. Mobile*, 344 So. 2d 279, 281 (Fla. Dist. Ct. App. 1977) (quoting 20 Fla. Jur. Libel and Slander §§ 6, 88) (emphasis added).[3] The question of whether or not Plaintiff can explicitly prove pecuniary loss is therefore irrelevant—it is presumed.[4]

As to **negligence**, the only way that participation in this malicious press conference inclusive of the vicious allegations levied by Chitwood, the legal consequences implied by Fine, and all other statements of all other co-defendants could have occurred is through negligence and wanton disregard for the foreseeable likelihood of harm to Plaintiff. "[m]oreover malice is presumed as a matter of law

---

[3] *See also*, PROSSER AND KEETON ON THE LAW OF TORTS, *supra* note 9 at 773 ("A defamatory communication has been defined as one which tends to hold the plaintiff up to hatred, contempt, or ridicule, or to cause him to be shunned or avoided… [but] [t]his definition is certainly too narrow, since an imputation of insanity, or poverty, or an assertion that a woman has been raped… have been held to be defamatory. Defamation is rather that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, good-will or confidence in which the plaintiff is held, ***or to excite adverse, derogatory or unpleasant feelings or opinions against him***. It necessarily [] involves the idea of disgrace." (emphasis added).

[4] Punitive damages are also guaranteed taking the facts in Plaintiff's complaint as true, "since the plaintiff established…statements were (1) false and (2) actionable per se, he need not show any proof of monetary loss to be entitled to recover punitive damages." *Bobenhausen*, 344 So. 2d at 281.

from the publication of such words." *Ibid.* If malice is presumed, then logically negligence being a lower standard must also be presumed. *See also Greene v. Times Publ'g Co.*, 130 So. 3d 724, 730 (Fla. App. 2014) ("A statement is not defamatory unless the 'gist' or 'sting' of the statement is defamatory. The gist of any statement within a publication or broadcast is found only by reference to *the entire context*.") (emphasis added).

Moreover, it is only where the court finds that a communication "*could not possibly* have a defamatory or harmful effect" that "the court is justified in dismissing the complaint for failure to state a cause of action." *Id.*, quoting *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001) (emphasis added). Defendant Fine's statements of agreement with Chitwood and Defendant Fine's statements of claiming Plaintiff would spend time in jail if he continued his at-that-time lawful behavior far surpasses the hurdle of "not possibly [having] a defamatory or harmful effect." *Ibid.*

## CONCLUSION

The definition of criminal littering did not magically change after almost one hundred years to incorporate Plaintiff's newspapers. Somebody had to come up with the idea, spread it, and ultimately convince enough co-conspirators in all three branches of State government—and perhaps beyond—to implement it. This is the

exact conspiracy that Defendant became an active shooter in (by taking shots at Plaintiff's character)—a targeted effort to unconstitutionally silence Plaintiff.

For Plaintiff, this case could be stylized *David v. Goliath*. Defendant Fine has vast financial resources and the ability to hire attorneys yet he chooses to use government attorneys. Plaintiff does not have those resources, due in part to the fact that Defendant Fine has defamed him, meaning lawyers do not want to risk their own personal reputation by representing him. Defendant is therefore being advantaged in this litigation as a direct result of his own unlawful conduct. That can't be right.

In another day, a court might issue a writ *quo warranto* against the Defendant and strip him of his capacity to fulfill any level of civil servitude in this nation. As a civil servant he is bound by law to deal with his opposition by democratic means. Threatening jailing, directing arrests, felonizing and outlawing his political opposition's ability to utilize the most basic and foundational civil right of the Constitution is effectively putting a gun to his opposition and saying, "I'm in charge and you're not." He is leveraging his position as an official of the State, while calling on executive actors to dismantle his opponents, instead of winning fairly. Attempting to influence armed enforcers to quell his dissenters is an expansion and abuse of his official role as legislator. It runs roughshod over our Constitution. And it runs

roughshod over Plaintiff's right under the First Amendment to be free from retaliation when distributing his pamphlets to his fellow citizens.

An existing ruling class should not be able to invoke their peculiar 'privileges' to outlaw any legitimate grassroots attempt to usher in a new ruling class that is more aptly suited to serve the people. That is the opposite of the Constitution. I have a degree in Aerospace Engineering. Understanding what Defendant Fine did here is not rocket science.

To rule in favor of Defendant is to aid and comfort jews against accountability to the Constitution and laws of the United States. This Court will not undo centuries of American jurisprudence. Defendant Fine will answer for his brazen pattern of targeted retaliation against me.

/s/ Colby Alexander Frank
Colby Alexander Frank, *Pro Se*
P.O. Box 86
Destin, Florida 32540
(+1) 941.275.5712
dariusthecarryus@gmail.com

## <u>LOCAL RULE 3.01(A) CERTIFICATION</u>

The undersigned certifies that this brief does not exceed twenty five pages inclusive of all parts.

<u>/s/ Colby Alexander Frank</u>
Colby Alexander Frank, *Pro Se*
P.O. Box 86
Destin, Florida 32540
(+1) 941.275.5712
dariusthecarryus@gmail.com

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

The undersigned certifies that Plaintiff conferred with Counsel for Defense regarding this brief in opposition via telephone.

<u>/s/ Colby Alexander Frank</u>
Colby Alexander Frank, *Pro Se*
P.O. Box 86
Destin, Florida 32540
(+1) 941.275.5712
dariusthecarryus@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been e-filed with the Clerk of Court using the e-Filing portal which will send notice and a copy to all counsel of record on April 25, 2025.

<u>/s/ Colby Alexander Frank</u>
Colby Alexander Frank, *Pro Se*
P.O. Box 86
Destin, Florida 32540
(+1) 941.275.5712
dariusthecarryus@gmail.com